**McDERMOTT WILL & EMERY LLP**
MATTHEW OSTER (SBN 190541)
JULIAN ANDRE (SBN 251120)
2049 Century Park East, Suite 3800
Los Angeles, California 90067
Telephone: 310-277-4110
Facsimile: 310-277-4730

**(Additional Counsel on Following Pages)**

Attorneys for Plaintiffs
William Caldwell, Allen McCorkendale,
Hilda Quintana, Leonard Woods, John
Washington, Joseph Bell, Doris Jarrett,
Patrick Michael O'Shea, Sylvia Welch,
Diane Merritt and CANGRESS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD WOODS, HILDA QUINTANA, ALLEN MCCORKENDALE, WILLIAM CALDWELL, JOHN WASHINGTON, JOSEPH BELL, DORIS JARRETT, PATRICK MICHAEL O'SHEA, SYLVIA WELCH, DIANE MERRITT, individuals, and CANGRESS, a non-profit California corporation.<br><br>Plaintiffs,<br><br>v.<br><br>ALEXANDRIA HOUSING PARTNERS, L.P., LOGAN PROPERTY MANAGEMENT, INC., CITY OF LOS ANGELES, COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. CV07-08262 MMM (JWJx)<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF FOR:**<br><br>1. **Failure to Provide Comparable or Last Resort Housing**<br>2. **Failure to Provide Relocation Assistance**<br>3. **Failure to Provide Relocation Assistance Notices**<br>4. **Failure to Adopt a Relocation Plan**<br>5. **Failure to Provide Comparable or Last Resort Housing**<br>6. **Failure to Provide Relocation Assistance**<br>7. **Failure to Provide California Relocation Assistance Act Notification**<br>8. **Failure to Adopt a Relocation Plan**<br>9. **Failure to Plan to Replace Affordable Housing**<br>10. **Violations Of Fair Housing Act**<br>11. **Violations of California Fair Employment and Housing Act**<br>12. **Violation of Title II of the Americans with Disabilities Act**<br>13. **Violations of Section 504 of the Rehabilitation Act of 1973**<br>14. **Violations of Cal. Gov't Code § 11135**<br>15. **Violations of Title VI of the Civil** |

LAS99 1672424-1.099760.0020

Rights Act of 1964
16. Violations of Unruh Civil Rights Act
17. Violations of Blind and Other
    Physically Disabled Persons Act
18. Violations of 42 U.S.C. § 1983
19. Violations of 42 U.S.C. § 1985(3)
20. Negligence
21. Tortious Breach of Warranty of
    Habitability
22. Nuisance
23. Negligent Maintenance of the
    Premises
24. Negligent Hiring and Supervision
25. Breach of Implied Covenant of
    Quiet Enjoyment
26. Unfair Business Practices
27. Retaliation
28. Intentional Infliction of Emotional
    Distress
29. Petition for Writ of Mandate

**DEMAND FOR JURY TRIAL**

**Counsel for Plaintiffs (continued from first page)**

**LEGAL AID FOUNDATION OF LOS ANGELES**
BARBARA SCHULTZ (SBN 168766)
LOUIS RAFTI (SBN 243813)
1550 W. 8th Street
Los Angeles, California 90017
Telephone:  213-640-3823
Facsimile:  213-640-3850

**DISABILITY RIGHTS LEGAL CENTER**
PAULA D. PEARLMAN (SBN 109038)
SHAWNA PARKS (SBN 208301)
Loyola Law School
919 Albany Street
Los Angeles, California 90015
Telephone:  213-736-1477
Facsimile:  213-736-1428

**WESTERN CENTER ON LAW AND POVERTY**
PATRICK DUNLEVY (SBN 162722)
DEANNA KITAMURA (SBN 162039)
ANDREA LUQUETTA (SBN 250632)
RICHARD A. ROTHSCHILD (SBN 67356)
3701 Wilshire Boulevard, Suite 208
Los Angeles, California 90010
Telephone:  213-235-2617
Facsimile:  213-487-0242

Attorneys for Plaintiffs
William Caldwell, Allen McCorkendale, Hilda Quintana, Leonard Woods, John
Washington, Joseph Bell, Doris Jarrett, Patrick Michael O'Shea, Sylvia Welch,
Diane Merritt and CANGRESS

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

Plaintiffs Leonard Woods, Hilda Quintana, Allen McCorkendale, William Caldwell, John Washington, Joseph Bell , Doris Jarrett, Patrick Michael O'Shea, Sylvia Welch, Diane Merritt and CANGRESS, aka Los Angeles Community Action Network ("LACAN"), for their Complaint for Damages, Declaratory, and Injunctive Relief against the City of Los Angeles ("City"), the Community Redevelopment Agency of the City of Los Angeles ("CRA-LA"), Alexandria Housing Partners, L.P. ("AHP"), Logan Property Management, Inc. ("LPM"), and Does 1 through 20 allege as follows.  This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action to address defendants' wrongful and illegal conduct associated with the renovation of the Alexandria residential hotel ("the Alexandria").  Continuously since on or about August 10, 2006, and continuing to today, defendants AHP and LPM have systematically and intentionally worked to remove the long-term tenants of the Alexandria and replace them with non-elderly, non-disabled, and non-African American tenants.  AHP and LPM have worked to accomplish these illegal goals by denying the Alexandria's disabled tenants reasonable accommodations, unlawfully evicting or partially evicting elderly, disabled, and African-American tenants from their apartments, denying them safe and habitable apartments, failing to provide statutory rights, failing to provide them legally required notices, and denying them legally required relocation benefits.

2.     The City and CRA-LA have enabled AHP and LPM to carry out this illegal scheme by funding their purchase of the Alexandria while failing to regulate their conduct as required by law.  The City and CRA-LA have not adopted relocation and replacement housing plans as required by state and federal law, have not provided required tenant notices, and have not provided relocation assistance including comparable housing and relocation compensation to displaced Alexandria tenants.  The City and CRA-LA further have failed to ensure that AHP and LPM,

recipients of federal and state funds, do not discriminate against Alexandria tenants on the basis of age, race, or disability.

3. Immediate and meaningful intervention is required to cease the irreparable harm being suffered by the plaintiffs. They have been evicted and partially evicted from their homes; denied reasonable accommodations, heat, water, egress, ingress, and access to sanitary facilities; and openly discriminated against. More than 80 tenants already have been forced out of the Alexandria without being provided the required relocation assistance, or even notice of their entitlements to the same. Absent Court intervention, the plaintiffs also will be forced from their homes (one already has been) and left to live on the street where, due to their respective ages and disabilities, they will suffer extraordinary harm.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiffs' claims for violations of the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) ("ADA"), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) ("Rehabilitation Act"), Title VI of the Civil Rights Act of 1964 ("Title VI"), and 42 U.S.C. §§ 1983 and 1985(3), among other claims for relief, arise under the Constitution and laws of the United States such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs' claims for violations of California state law concern the same actions and omissions that form the basis of plaintiffs' federal question claims such that they all are part of the same case or controversy. This Court, therefore, has supplemental jurisdiction over those California state law claims pursuant to 28 U.S.C. § 1367.

5. 42 U.S.C. § 1983 confers a right of action to enforce the federal statutes cited herein. California Code of Civil Procedure § 1085 confers a right of action to enforce the California state statutes cited herein.

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1 and 2). Defendants City and CRA-LA reside in the Central District of California, and the events, acts, and omissions giving rise to plaintiffs' claims occurred in the Central District of California.

## PARTIES

7.     Plaintiffs are informed, believe, and on that basis allege, that defendant ALEXANDRIA HOUSING PARTNERS, L.P. is and, at all times relevant to this action, was a limited liability partnership organized under the laws of the State of California, with its principal place of business in San Diego, California.  AHP owns and operates the Alexandria, which is located at 501 South Spring Street and 210-212 West 5th Street.  The Alexandria is located within the Community Redevelopment Agency of the City of Los Angeles City Center Redevelopment Project Area.  Plaintiffs are informed, believe, and on that basis allege, that the AHP has received a variety of state, federal and local funding for the acquisition, renovation and redevelopment of the Alexandria, which is in the midst of a major renovation.  This funding includes, but is not limited to, funding in the form of tax-exempt bonds and HOME Investment Partnerships ("HOME") program funding.

8.     Plaintiffs are informed, believe, and on that basis allege, that defendant LOGAN PROPERTY MANAGEMENT, INC. is and, at all times relevant to this action, was a corporation organized under the laws of the State of California, with its principal place of business in San Diego, California.  LPM manages the Alexandria on behalf of AHP.

9.     Defendant CITY OF LOS ANGELES is, and at all times relevant to this action was, a public entity organized and existing under the laws of the State of California.  Plaintiffs are informed, believe, and on that basis allege, that the City has provided a variety of state, federal and local funding for the acquisition, renovation and redevelopment of the Alexandria.  This funding includes, but is not

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

limited to, funding in the form of tax exempt bonds and HOME funding.  The City provides oversight and guidelines to CRA-LA.

10.   Defendant COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES is, and at all times relevant to this action was, a public entity organized under the laws of the State of California.  Plaintiffs are informed, believe, and on that basis allege, that CRA-LA has provided a variety of state, federal and local funding for the acquisition, renovation and redevelopment of the Alexandria.  This funding includes, but is not limited to, tax exempt bonds and tax increment revenue.

11.   The identities and capacities of defendants DOES 1 through 20 are unknown to plaintiffs.  Plaintiffs, therefore, sue these defendants by fictitious names.  As to all defendants sued by fictitious names, plaintiffs will give notice of this Complaint and their true names and capacities when ascertained.  Plaintiffs are informed, believe, and thereon allege that DOES 1 through 20 are, and were at all times relevant herein, other corporate or business entities, agents, successors in interest, assigns, representatives, principals and/or employees of the defendants and are responsible for the acts and omissions resulting in the violations alleged in this complaint.  Defendants DOES 1 through 20 are sued in both their official and individual capacities.

12.   Plaintiffs are informed, believe, and thereon allege that at all times relevant herein, defendants DOES 1 through 20, AHP, and LPM were the agents, representatives, successors in interest, principals and/or employees of each other, and in doing the things alleged herein were acting within the course and scope of such agency and employment.  Plaintiffs also intend to include each and every successor and assign of these defendants, to the extent such successors and assigns become the owners or operators of the Alexandria.

13.   Plaintiff LEONARD WOODS is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Mr. Woods is a 53 year

old African-American with a physical disability that significantly impairs his mobility.  Mr. Woods has had four surgeries on his spine and requires a motorized wheelchair.  Mr. Woods has lived at the Alexandria since 1997.

14.   Plaintiff HILDA QUINTANA is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Ms. Quintana is a 71 year old Native American who has a physical disability that impairs her mobility.  Ms. Quintana requires a cane or a walker to walk.  Ms. Quintana has been a resident at the Alexandria since 1982.

15.   Plaintiff ALLEN MCCORKENDALE is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Mr. McCorkendale is a 70 year old disabled Caucasian who has a mobility impairment that requires the use of a motorized wheel chair.  Mr. McCorkendale also has a serious heart condition and has been diagnosed with prostate cancer.  Mr. McCorkendale has been a resident at the Alexandria since 2000.

16.   Plaintiff WILLIAM CALDWELL is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Mr. Caldwell is a 51 year old African American who has a mental disability that causes severe anxiety.  Mr. Caldwell has been a resident at the Alexandria since 2003.

17.   Plaintiff JOHN WASHINGTON is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Mr. Washington is a 25 year old African-American SSI recipient who has a mental disability that severely impacts his ability to perform daily activities, such as paying rent, without assistance.  Mr. Washington was a resident at the Alexandria from 2000 until May 2007, when he was wrongfully evicted from his apartment.

18.   Plaintiff JOSEPH BELL is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Mr. Bell is a 72 year old African-American SSI recipient with multiple disabilities including, but not limited to, loss

of memory, mobility impairment, and frequent seizures.  Mr. Bell has been a resident at the Alexandria since 1997.

19.   Plaintiff DORIS JARRETT is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Ms. Jarrett is a 45 year old African American woman with developmental disability.  Ms. Jarrett is an extremely low income person who lived at the Alexandria in apartment number 651 from October 2004 until she was locked out in June 2007.

20.   Plaintiff PATRICK MICHAEL O'SHEA is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Mr. O'Shea is a 65 year old Caucasian man with early onset dementia, which causes him severe anxiety that is exacerbated by stress.  Mr. O'Shea is an extremely low income person.  He lived in apartment number 1001 at the Alexandria from April 2000 until he was forced to leave on April 30, 2007.

21.   Plaintiff SYLVIA WELCH is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Ms. Welch is a 65 year old African American woman with developmental disability, seizure disorder, severe arthritis, and asthma.  Sylvia Welch is an extremely low income person who lived at the Alexandria from 1990 until she was evicted in June 2007.

22.   Plaintiff DIANE MERRITT is an individual who, at all times relevant to this Complaint, resided in Los Angeles County.  Ms. Merritt is a 61 year old African American woman with rheumatoid arthritis , seizure disorder, asthma and bronchitis, as well as mental disabilities.  Ms. Merritt is an extremely low income person.  Ms. Merritt lived in Alexandria apartment 748 since about January 2005.  In January 2008, defendants required Ms. Merritt to move from her apartment so that it could be renovated.  Ms. Merritt first was moved to an apartment on the 9th floor and then in April 2008 she was moved again to apartment 448.  Although Ms. Merritt requested to move back to apartment 748, she was informed that apartment has been rented to someone else.

23.   Plaintiff CANGRESS, aka Los Angeles Community Action Network, is, and at all times relevant to this action was, a non-profit California corporation serving low-income and homeless residents in downtown Los Angeles.

24.   All of the individual plaintiffs are extremely low income persons.

## THE HISTORY OF THE ALEXANDRIA

25.   The Alexandria was built in 1906.  When it was first built, the Alexandria was a locus of the City's social life, attracting the top talent of the developing Southern California movie industry as well as national figures and foreign royalty.  It is designated as Historic Cultural Monument No. 80 of the City and is listed in the National Register of Historic Places as part of the Spring Street Financial District.

26.   Following World War II , downtown Los Angeles experienced a dramatic demographic shift.  By 1990, the Alexandria was operating as a residential hotel, offering daily, weekly and monthly rates for its rooms.  While a percentage of the rooms were rented on a short-term basis, a large portion of the Alexandria's tenant population was relatively stable, with the same tenants having leased more than 100 of the units for over 15 years.

## REDEVELOPMENT FUNDING

27.   AHP purchased the Alexandria and took over its operation on August 10, 2006.  LPM manages the Alexandria on behalf of, and under the direction of, AHP.

28.   Plaintiffs are informed, believe, and on that basis allege, that the City and CRA-LA provided a variety of state, federal and local funding for AHP's acquisition, renovation and redevelopment of the Alexandria.  This funding includes, but is not limited to, funding in the form of tax-exempt bonds and HOME funding.

29.     Plaintiffs are informed, believe, and on that basis allege, that the City and CRA-LA provided AHP a $35 million in tax exempt bond allocation to assist in funding the purchase and renovation in the Alexandria.

30.     Plaintiffs are informed, believe, and on that basis allege, that the City and CRA-LA approved an $11.9 million loan to provide permanent financing of the Alexandria.

31.     The requirements of the Housing and Community Development Act, 42 U.S.C. §§5301, *et seq.*, ("HCDA") and the Uniform Relocation Act, 42 U.S.C. §§4601, *et seq.*, ("URA") apply when HOME funds are used to rehabilitate housing.  24 C.F.R. § 42.1.

32.     The requirements of the California Redevelopment Act, California Health and Safety Code §§ 33410, *et seq.*, and the California Relocation Act, 25 C.C.R. § 6038, all apply when tenants are displaced as part of a redevelopment project.

### THE RENOVATION

33.     With the approval of the City and CRA-LA, upon its purchase of the Alexandria, AHP and LPM commenced a major renovation of the Alexandria.

34.     This major renovation has caused tenants to be without heat and hot water for more than four weeks.

35.     Tenants also have been deprived of all running water for at least one day per week and frequently for longer periods of time.  Given the type of toilets at the Alexandria, this deprivation of running water makes those toilets inoperable for at least one day per week and frequently for longer periods of time.

36.     AHP also has taken its elevators out of service for extended periods of time without making reasonable accommodations for ingress and egress, effectively stranding tenants with disabilities in their apartments.  AHP also has erected barriers in its public rights of way, again blocking ingress to and egress from its apartments.

37.     AHP also is conducting construction activities at the Alexandria during prohibited hours.

38.     During the renovation, AHP and LPM have partially, temporarily, and totally displaced tenants without providing the relocation assistance due.

39.     Plaintiffs are informed, believe, and on that basis allege, that the Alexandria will have fewer units affordable to extremely low, very low and low income tenants when renovation is complete.

## RELOCATION / DISPLACEMENT

40.     Alexandria tenants were not provided with proper relocation notices.

41.     Alexandria tenants were not provided relocation assistance during their partial or temporary relocation.

42.     At least eighty Alexandria tenants, including one plaintiff, have been permanently displaced without being provided relocation assistance.

## LEONARD WOODS

43.     Mr. Woods is a 53 year old African-American with a physical disability that significantly impairs his mobility.  Mr. Woods has had four surgeries on his spine and requires a motorized wheelchair.  Mr. Woods is an extremely low income person.  Mr. Woods has lived at the Alexandria since 1997.  Since 2000, Mr. Woods' unit has been comprised of three rooms.

44.     On or about June 29, 2007, Mr. Woods received a "10 Day Notice Re: Temporary Relocation During Upgrade/Renovation."  On or about July 9, 2007, Mr. Woods made a written request for clarification regarding relocation and a written relocation agreement.  On or about July 20, 2007, Mr. Woods received a "Notice of Intent to Enter" stating that Alexandria employees would enter his unit Monday, July 23, 2007, through Friday, July 27, 2007, between the hours of 8:00 a.m. and 4:00 p.m.

45.     On August 8, 2007, Mr. Woods was given a "30 Day Notice of Change in Terms of Tenancy" that stated he must vacate two of the three rooms that

comprised his unit.  Mr. Woods has refused to vacate this portion of his apartment and AHP and LPM have refused to accept and/or returned Mr. Woods monthly rent for the months of September, October, November and December 2007.

46.     AHP and LPM have demanded that Mr. Woods move to a temporary unit that is not adequate for his needs in that it is too small and the doorways are not of a sufficient size to allow passage with his motorized wheelchair.  AHP and LPM have denied Mr. Woods a unit comparable to his current one.

47.     Mr. Woods has also suffered numerous instances of discrimination at the hands of the Alexandria including, but not limited to, being refused access to his mail, and being blocked from the elevator.  Despite multiple requests, AHP and LPM failed to provide reasonable accommodations based on Mr. Woods' disabilities such as an accessible mail box or parking space, or acceptance of crucial medications delivered for Mr. Woods at the management office when he is not at home.  Although AHP and LPM eventually provided Mr. Woods a mailbox (but not one large enough to receive his medications), it was provided months later than those provided to other tenants.  AHP and LPM continue to deny Mr. Woods an accessible parking space and refuse to reasonably accommodate the delivery of his medications.

48.     AHP and LPM also have retaliated against Mr. Woods for exercising his rights and complaining as described herein by threatening him with eviction, withdrawing reasonable accommodations, and other forms of harassment.

## HILDA QUINTANA

49.     Ms. Quintana is a 71 year old Native American who has a physical disability that impairs her mobility.  Ms. Quintana requires a cane or a walker to walk.  Ms. Quintana is an extremely low income person.  Ms. Quintana has been a tenant at the Alexandria for twenty-five years, occupying two rooms since 1982.

50.     On or about June 28, 2007, AHP and LPM forcibly evicted Ms. Quintana from a portion of her unit by moving all of her belongings that were in

one of her rooms into the other and locking her out of one of her two rooms.  All of her belongings were thrown into this single room and her sofa and other furniture were left upside down.  Ms. Quintana was given no prior notice of this partial eviction.

51.    This unlawful partial eviction and lockout has resulted in significant difficulties for Ms. Quintana in light of her disability.  She now has half the space she requires to accommodate her belongings and move around her unit adequately.  Ms. Quintana also has suffered difficulties as a result of the frequent elevator outages and her mobility impairment.  Ms. Quintana has made complaints about these issues.  To date, defendants have ignored all of Ms. Quintana's complaints.

52.    AHP and LPM also have denied Ms. Quintana a replacement unit that is comparable to her original one.

53.    AHP and LPM also have retaliated against Ms. Quintana for exercising her rights and complaining as described herein by threatening her with eviction, withdrawing reasonable accommodations, and other forms of harassment.

## ALLEN MCCORKENDALE

54.    Mr. McCorkendale has been a resident at Alexandria since 2000.  Mr. McCorkendale is a 71 year old Caucasian who has a physical disability that impairs his mobility, requiring his use of a motorized wheelchair.  Mr. McCorkendale also has a serious heart condition and has been diagnosed with prostate cancer.  Mr. McCorkendale is an extremely low income person.

55.    Despite numerous objections, AHP and LPM have discontinued numerous services the Alexandria had provided Mr. McCorkendale as reasonable accommodations to allow him to live independently, such as a working telephone jack, supplying towels, and supplying toilet paper.

56.    AHP and LPM also have failed to maintain the elevator service to Mr. McCorkendale's unit on the 10th floor of the Alexandria, or to provide him other means of ingress to and egress from his apartment.  Mr. McCorkendale has been

stranded in his apartment for several days at a time due to failing elevators.  On numerous occasions, this has caused Mr. McCorkendale to miss important medical appointments relating to his heart condition and with his oncologist.  Furthermore, as AHP and LPM have disconnected the water service to the Alexandria for extended periods of time and at least one full day per week, this has meant that Mr. McCorkendale has been unable to obtain drinking water or use his toilet for extended periods of time.

57.   AHP and LPM also have retaliated against Mr. McCorkendale for exercising his rights and complaining as described herein by threatening him with eviction, withdrawing reasonable accommodations, and other forms of harassment.

## **WILLIAM CALDWELL**

58.   Mr. Caldwell is a 51 year old African American who has a mental disability that causes severe anxiety and which is exacerbated by stress.  Mr. Caldwell is an extremely low income person.  Mr. Caldwell has been a resident at the Alexandria since 2003.

59.   On June 29, 2007, Mr. Caldwell received a "10 Day Notice Re: Temporary Relocation" from the Alexandria stating that he would be temporarily relocated to another unit within the Alexandria.  Mr. Caldwell's request to inspect the unit to ensure that it was large enough to accommodate his personal belongings was denied.  Furthermore, the Alexandria did not provide a specific date on which the relocation would occur.  On July 19, 2007, Mr. Caldwell requested in writing that in light of his disability he be given adequate time to relocate his personal property to a comparable unit.

60.   Instead of giving Mr. Caldwell the reasonable notice which he requested, at approximately 1:00 P.M. on July 20, 2007, Mr. Caldwell was ordered to vacate his unit and relocate by 2:00 P.M., giving him about one hour notice to move out of his home.  At 2:00 P.M., Mr. Caldwell's belongings were literally thrown into the new unit by construction workers.  Mr. Caldwell's temporary unit

LAS99 1672424-1.099760.0020          -12-

was considerably smaller than his previous unit and did not adequately accommodate his belongings or allow him to live comfortably within the unit. The temporary unit did not have enough space for Mr. Caldwell to sleep, move around, or get in and out the door without bumping into or tripping over things. The Legal Aid Foundation of Los Angeles ("LAFLA") sent several requests for reasonable accommodation on Mr. Caldwell's behalf, requesting both an adequate unit, in consideration of his disability, and that the Alexandria discuss matters regarding his tenancy in general and his relocation in particular with his attorneys at LAFLA. Neither AHP, LPM, nor their attorneys responded to either of these requests.

61.    On October 8, 2007, without notice to LAFLA, Mr. Caldwell was relocated back to his original unit. His belongings were again literally thrown into the unit, which was left in utter disarray. Mr. Caldwell's relocation to his original unit did not remedy the significant damages which Mr. Caldwell suffered from the wrongful conduct to which he was subjected.

62.    AHP and LPM also have retaliated against Mr. Caldwell for exercising his rights and complaining as described herein by threatening him with eviction, withdrawing reasonable accommodations, and other forms of harassment.

## JOHN WASHINGTON

63.    John Washington is a 25 year old African-American SSI recipient who has a mental disability that severely impacts his ability to perform daily activities, such as paying rent, without assistance. Mr. Washington is an extremely low income person. John Washington lived at the Alexandria from 2000 until April 2007.

64.    During that time, John Washington's father, George Washington, lived next door to John, and acted as John's caregiver by, among other things, paying John's rent. AHP and LPM knew that George Washington was responsible for handling John Washington's affairs. On the morning of April 2, 2007, the Alexandria moved John Washington to a unit on the seventh floor of the

Alexandria.  On the morning of April 4, 2007, George Washington was told that he was being moved to the eighth floor of the Alexandria.  All of George Washington's personal property was hastily packed into bags and boxes and haphazardly placed in the eighth floor unit by employees of the Alexandria.  In that process, the money order George Washington had obtained to pay John Washington's rent was misplaced.

65.   On or about April 6, 2007, John Washington received a 10 day pay or quit notice on his door (on the seventh floor), but the same notice was not provided to George Washington (on the eighth floor).  John Washington was not able to understand or respond to the notice because of his disability.  On or about April 17, 2007, George Washington attempted to pay John Washington's rent, but was told it was too late and that John Washington was being taken to court.  John Washington was evicted in May 2007, and displaced without being provided relocation assistance, including comparable housing and relocation compensation.

66.   AHP and LPM also have retaliated against John Washington for exercising his rights and complaining as described herein by threatening him with eviction, withdrawing reasonable accommodations, and other forms of harassment.

**JOSEPH BELL**

67.   Joseph Bell is a 72 year old African American SSI recipient.  Mr. Bell suffers from multiple disabilities including, but not limited to, loss of memory, mobility impairment, and frequent seizures.  Mr. Bell is an extremely low income person.  Mr. Bell has been a resident at the Alexandria since 1997.

68.   Mr. Bell requires the assistance of an In-Home Support Services ("IHSS") worker to assist him when he has seizures, to ensure that he does not injure himself during seizures, to call for emergency medical assistance when necessary, to dispense and monitor Mr. Bell's medication, to prepare his meals, and to clean his apartment.

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

69.   The IHSS program is a Medi-CAL funded benefit created and administered specifically for the purpose of enabling seniors and people with disabilities to remain in their homes.

70.   Yolanda McGriff is Mr. Bell's designated IHSS provider.  Mr. Bell specifically requires Ms. McGriff to act as his IHSS provider due to her familiarity with him and his specific needs.

71.   Mr. Bell has twice requested the reasonable accommodation of allowing Ms. McGriff access to the Alexandria so that she can provide his IHSS services.

72.   AHP and LPM, however, have refused to provide such an accommodation and have refused to allow Ms. McGriff reasonable access to the building.  Since his care giver has been excluded from the premises, Mr. Bell has suffered seizures requiring emergency medical response three times, two of which resulted in Mr. Bell's hospitalization.

73.   Since requesting a reasonable accommodation, Mr. Bell has been subjected to retaliatory actions by AHP including, but not limited to, demanding that Mr. Bell execute a new rental application for his unit at the Alexandria and Alexandria security guards forcibly detaining and "arresting" Mr. Bell's care giver as she left Mr. Bell's unit.

## DORIS JARRETT

74.   Doris Jarrett is a 45 year old African American woman with a developmental disability.  Ms. Jarrett is an extremely low income person who lived at the Alexandria in apartment number 651 from October 2004 until she was locked-out in June 2007.

75.   Ms. Jarrett paid her rent on May 1, 2007, and told Alexandria Manager Michael Vasquez that she was planning a trip to Michigan to visit family.  In mid-May 2007, Ms. Jarrett set out to catch a bus to Michigan, but was unable to do so and returned that same day to the Alexandria.  The Alexandria security guards

refused her access to her apartment.  Later that day, Ms. Jarrett boarded a bus and went to Michigan.

76.    When Ms. Jarrett returned from Michigan in the first week of June 2007, she found that the locks on the door of her apartment at the Alexandria had been changed.  She complained to Alexandria Manager Michael Vasquez, but he refused to let her into her room and refused to accept her rent for June 2007. Michael Vasquez told Ms. Jarrett that he didn't want her there anymore and told her to leave.  He did not allow her to retrieve any personal possessions or other items she had left in her apartment.

77.    Ms. Jarrett never received any Notice to pay rent or quit, or to cure covenants or quit, or to quit premises from the Alexandria, nor was she served with notice of an unlawful detainer.  The Alexandria just changed the locks to the door of her apartment and told her that they didn't want her there anymore.

78.    After she was locked out of her apartment at the Alexandria, Ms. Jarrett was homeless for three months and stayed at the Union Rescue Mission on Skid Row.  During that time, she made eight applications for affordable housing, but was unsuccessful.  In about October 2007, Ms. Jarrett found a unit in a residential hotel near MacArthur Park.  She has lived there since October 2007, and pays $784.00 per month in rent, over $200 more than what she paid at the Alexandria.

79.    Since Doris Jarrett's entire income derives from SSI, it is very difficult for her to survive on what she has left after paying rent each month.  She usually runs out of money by the middle of the month, and after that is forced to survive by obtaining free meals.

## PATRICK MICHAEL O'SHEA

80.    Patrick Michael O'Shea is a 65 year old Caucasian man with early onset dementia, which causes him severe anxiety that is exacerbated by stress.  Mr. O'Shea is an extremely low income person.  He lived in apartment number 1001 at the Alexandria from April 2000 until he was forced to leave on April 30, 2007.

Apartment number 1001 is very large and has spectacular views of both downtown Los Angeles and of the mountains.  Mr. O'Shea paid rent of $330.96 per month for this apartment.

81.    Prior to August 2006, rent paid by residents of the Alexandria was accounted for on Hotel Registration Cards.  Overnight guests of residents were required to pay a guest fee.  When a friend visited Mr. O'Shea in early 2006, she registered and paid guest fees for three weeks.  Her rent was accounted for on a separate registration card.

82.    In the fall of 2006, LPM began a reconciliation of the former owners' manual accounting.  On November 3, 2006, Patrick O'Shea received a Notice to Pay or Quit for $225.00, only stating that he owed $225.00 "Due Now."  When Mr. O'Shea went to the front desk to inquire, he was told that rent was due for guest fees for his guest for the three weeks she had stayed with him at the Alexandria over six months earlier.  Mr. O'Shea explained that his guest had paid for herself, but was told by an Alexandria manager that "the registration card had been lost."

83.    The Alexandria filed and served Patrick O'Shea with a Complaint for Unlawful Detainer (Eviction) for failure to pay rent of $225.00 in late November 2006.  The Front Desk Manager of the Alexandria found the registration card for Mr. O'Shea's guest showing payment for the disputed $225.00 and gave Mr. O'Shea a copy.  On the trial date, December 29, 2006, the case was dismissed by the Alexandria.

84.    After this case was dismissed, the Alexandria returned the money orders Mr. O'Shea used to pay his rent, with a note stating that they were refusing to accept his rent.

85.    On February 21, 2007, the Alexandria served Mr. O'Shea with a Notice to Pay rent of $930.02 or Quit, for the period from December 1, 2006 through February 28, 2007.  The Alexandria filed and served Patrick O'Shea with a Complaint for Unlawful Detainer (Eviction) for failure to pay rent of $930.02 in

March of 2006.  Mr. O'Shea went to court on March 28, 2007, prepared to defend himself.  The Alexandria's counsel, however, told Mr. O'Shea that the Alexandria didn't want him there and, even if he could win this time, they would keep trying until they got him out.  Because of this intimidation, Mr. O'Shea stipulated to move out and left his apartment at the Alexandria on April 30, 2007.  Mr. O'Shea wasn't able to coordinate moving and lost many of his personal belongings.  Since leaving the Alexandria, Mr. O'Shea has lived with a friend.

## SYLVIA WELCH

86.    Sylvia Welch is a 65 year old African American woman who lived at the Alexandria from 1990 until she was evicted in June 2007.  Ms. Welch has a developmental disability, seizure disorder, severe arthritis, and asthma.  Ms. Welch is an extremely low income person.

87.    Ms. Welch paid rent at the Alexandria for all months that she lived there, and has receipts for rent for all months that she lived there except for March 2007.  Although Ms. Welch paid rent for the month of March 2007, an Alexandria Manager refused to provide her a receipt.

88.    On March 21, 2007, Ms. Welch received a 10 Day Notice to Pay or Quit.  Although she did not owe rent, Ms. Welch tendered the amount indicated in the Notice on March 30, 2007, which was on the 9th day of the Notice period.  The manager at the Alexandria refused to accept this amount and told her that she also owed an additional $600.  He referred to the 10-day notice that said that court costs are the responsibility of the tenant.  Ms. Welch did not have the additional $600.

89.    The Alexandria served Sylvia Welch with  an unlawful detainer on April 20, 2007 for non payment.  Unable to defend herself effectively at trial without an attorney, she lost the eviction case and then was forced to vacate.  At trial she was told.

90.    Ms. Welch became homeless due to this eviction.  She was in and out of the LA Mission from July through December 2007 until she was able to locate

another residential hotel unit. She now pays over $200 more a month than she did at the Alexandria.

## DIANE MERRITT

91.  Diane Merritt is a 61 year old African American woman who suffers from rheumatoid arthritis , seizure disorder, asthma and bronchitis, as well as mental disabilities She lived in  unit 748  of the Alexandria from about January 2005 to January, 2008.  In January, 2008 LPM gave Ms. Merritt a letter stating that she had to move temporarily from her apartment to an apartment on the 9th floor.

92.  Although Ms. Merritt objected to moving when she discovered that the electrical outlets in the 9th floor apartment did not work, the Alexandria Manager told her to either move, or move out.  In mid-February 2008, Ms. Merritt received several letters from the Alexandria, stating that the rehabilitation of her original apartment would be ready soon and that she would soon be able to move back. However, at the end of March, when Ms. Merritt went to the management office and asked to move back to her apartment, she was told it was not ready yet and that she could move to unit 448 until it was ready.

93.  In April 2008 Ms. Merritt started receiving mail for a third party in her mailbox for unit 748, which she had retained while in her temporary units.  Soon afterwards she was called into the LPM office and found that her April SSI check, which she had reported missing, was there.  The manager then told her she had to turn in the mailbox key to 748 and she would receive a key to 448.  When she said she wanted to move back to 748, she was told she could not.  A neighbor then told her that a third party had moved into 748.

94.  Ms. Merritt still is presently living in 448, which is smaller than her original apartment and cannot accommodate her personal possessions and furniture, has very low water pressure in the bathroom, and no hot water.

## CANGRESS aka LOS ANGELES COMMUNITY ACTION NETWORK

95.    LACAN is a non-profit California corporation serving low-income and homeless residents in the Skid Row area of downtown Los Angeles.  LACAN's mission is to help people dealing with poverty create and discover opportunities, while serving as a vehicle to ensure they have voice, power and opinion in the decisions that directly affect them.

96.    LACAN's clients include many residents of the Alexandria, many of whom have been illegally discriminated against and displaced without having received proper relocation notices, relocation payments, or offers of replacement housing.  Throughout the actionable time period, LACAN staff have spent extraordinary and excessive amounts of time and money working to mitigate the impact of this wrongful and illegal conduct of AHP, LPM, CRA-LA, and the City, which would not have been expended were it not for the AHP's, LPM's, CRA-LA's, and City's wrongful and illegal conduct.

97.    LACAN has an interest in preserving accessible housing and services for its clients and eliminating defendants' discriminatory conduct that exacerbates their clients' poverty.


### FIRST CLAIM FOR RELIEF

Failure to Provide Comparable or Last Resort Housing

as Required by the Uniform Relocation Act (URA)

42 U.S.C. §§4601 *et seq.*; 49 C.F.R. §§24.2 *et seq.*)

(By All Plaintiffs Against City and CRA-LA)

98.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 97 above, as if each such allegation was set forth in full herein.

99.    The Uniform Relocation Act ("URA") requires that the City and CRA-LA provide displaced tenants comparable housing into which they can move prior to undertaking the renovation of the Alexandria.  Comparable housing must be

functionally equivalent and accessible to disabled tenants and into which they can move prior to undertaking the renovation of the Alexandria.  42 U.S.C. §§4601, *et seq.,*  49 C.F.R. §24.204.

100.  If comparable housing does not exist, the City and CRA-LA must provide additional or alternative assistance, known as last resort housing.  49 C.F.R. § 24.404.

101.  The City and CRA-LA have denied Mr. Woods, Ms. Quintana, Mr. Caldwell, Mr. Washington, Mr. Bell, and at least 80 other displaced tenants of the Alexandria comparable or last resort housing units to which they are entitled in accordance with the requirements of the URA.

### SECOND CLAIM FOR RELIEF

Failure to Provide Relocation Compensation as Required by the

Uniform Relocation Act

(42 U.S.C. §§ 4601 *et seq.*; 49 C.F.R. §§24.2 *et seq.*)

(By All Plaintiffs Against City and CRA-LA)

102.  Plaintiffs incorporate by reference the allegations of paragraphs 1 through 101 above, as if each such allegation was set forth in full herein.

103.  The URA requires that the City and CRA-LA make available to displaced Alexandria tenants relocation compensation to pay for moving and increased housing costs.  42 U.S.C. § 4622; 49 C.F.R. §§ 24 *et seq.*

104.  The City and CRA-LA have denied Mr. Woods, Ms. Quintana, Mr. Washington, Mr. Bell, and at least 80 other permanently displaced Alexandria tenants the relocation compensation to which they are entitled in accordance with the requirements of the URA.

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

## **THIRD CLAIM FOR RELIEF**

Failure to Provide Relocation Notices as Required by Uniform Relocation Act

42 U.S.C. §§ 4601 *et seq.*; 49 C.F.R. §§24.203 *et seq.*)

(By All Plaintiffs Against City and CRA-LA)

105.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 104 above, as if each such allegation was set forth in full herein.

106.   Federal law requires that the City and CRA-LA, as soon as it was feasible and at least 90 days prior to displacement, give general information notices to Alexandria tenants scheduled to be displaced.  49 C.F.R. §24.203(a).  The notice should have informed those tenants that they may be displaced, described the relocation assistance for which they may be eligible, the basic conditions of eligibility, the procedures for obtaining payments, and described appeal rights, among other requirements.  49 C.F.R. §24.203(a).  Neither the City nor CRA-LA provided any such notices.

107.   Federal law also requires that the City and CRA-LA give notice of relocation eligibility to Alexandria tenants on the date that negotiations to redevelop the Alexandria began.  49 C.F.R. §24.203(b).  These notices should have notified all tenants in writing of their eligibility for applicable relocation assistance.  *Id.* Neither the City nor CRA-LA provided any such notices.

108.   Because the tenants of the Alexandria, including the plaintiffs, were not provided these required notices, they were not aware of their rights to relocation assistance, including comparable housing and relocation compensation.  This has directly and proximately caused at least eighty Alexandria tenants, including one plaintiff, to be partially, temporarily, or totally displaced without relocation assistance and has caused plaintiff LACAN to spend extraordinary and excessive amounts of time and money working to mitigate the impact of the wrongful and illegal conduct of defendants.

**FOURTH CLAIM FOR RELIEF**

Failure to Adopt and Follow a Relocation Plan as Required by the Housing and

Community Development Act (HCDA) and the HOME program

(42 U.S.C. §5304; 24 C.F.R. §§42 *et seq.*)

(42 U.S.C. §§12701 *et seq.*; 24 C.F.R. Part 92)

(By All Plaintiffs Against City and CRA-LA)

109.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 108 above, as if each such allegation was set forth in full herein.

110.   The HCDA requires that the City and CRA-LA adopt and follow a Relocation Plan prior to displacing tenants.  The plan must describe the steps the City and CRA-LA will take provide relocation assistance as required under the URA and HOME program (42 U.S.C. §§12701 *et seq.*; 24 C.F.R. Part 92). 24 C.F.R. §§42.325(a)(1), 42.325(b),

111.   The City and CRA-LA have not adopted and followed a Relocation Plan that describes the steps the City and CRA-LA will take to provide to each temporarily and permanently displaced tenant (a)  advisory services, (b) moving expenses; (c) the costs of a security deposit and credit checks if necessary to secure a new apartment; (d) interim living costs including reasonable out of pocket costs in connection with a displacement; and (e) replacement housing assistance.  *See* 24 C.F.R. §§42.350 and 24 C.F.R. Part 92.

**FIFTH CLAIM FOR RELIEF**

Failure to Provide Comparable or Last Resort Housing as Required by

the California Relocation Assistance Act

(Cal. Gov't Code §§ 7260 *et seq.*; and 25 C.F.R. §§ 6000 *et seq.*)

(By All Plaintiffs Against the City and CRA-LA)

112.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 111 above, as if each such allegation was set forth in full herein.

113.   The California Relocation Assistance Act, California Gov't Code § 7260, *et seq.*, requires that no person shall be permanently displaced by a public entity undertaking a program or project until comparable housing is made available that is decent, safe, sanitary, within the financial means of the displaced person and functionally equivalent, among other things.

114.   The California Relocation Assistance Act also requires that no person shall be temporarily displaced by a public entity undertaking a program or project until adequate housing is made available.

115.   If comparable or adequate housing does not exist, the public entity must terminate its displacing activity or make available last resort housing.  Cal. Govt. Code §7264.5; 25 C.C.R §§ 6042 and 6054.

116.   Defendants have failed to comply with the regulations set forth in the California Relocation Assistance Act.

## SIXTH CLAIM FOR RELIEF

Failure to Provide Relocation Payment

As Required by the California Relocation Assistance Act

(Cal. Gov't Code §§ 7262 and 7264 and 25 C.C.R. §§ 6090, *et seq.*, and 6104)

(By All Plaintiffs Against the City and CRA-LA)

117.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 116 above, as if each such allegation was set forth in full herein.

118.   The California Relocation Assistance Act provides that displaced tenants shall be given a relocation payment calculated in accordance with Cal. Gov't Code §§ 7262 and 7264 and 25 C.C.R. §§ 6090, *et seq.*, and 6104.

119.   Defendants have failed to comply with the regulations set forth in the California Relocation Assistance Act.

## SEVENTH CLAIM FOR RELIEF

Failure to Provide California Relocation Assistance Act Notification

(Cal. Gov't Code § 7260 and 25 C.C.R. §§ 6000, *et seq.*)

(By All Plaintiffs Against the City and CRA-LA)

120.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 119 above, as if each such allegation was set forth in full herein.

121.    The California Relocation Assistance Act and its implementing regulations require the City and CRA-LA to provide a variety of notices to tenants, including information about the availability of relocation assistance and eligibility requirements at the time an agreement is negotiated between a private entity and the public entity for acquisition or financial assistance.

122.    Under state law, no tenant shall be required to move from a dwelling without at least 90 days written notice and until a comparable replacement unit is available to be occupied by the tenants.

123.    Defendants have failed to comply with the statutory and regulatory requirements of the California Relocation Assistance Act.

## EIGHTH CLAIM FOR RELIEF

Failure to Adopt a Relocation Plan as Required

by the California Relocation Assistance Act

(Cal. Gov't Code §§ 7260, *et seq.*; and 25 C.C.R. §§ 6010, *et seq.*)

(By All Plaintiffs Against the City and CRA-LA)

124.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 123 above, as if each such allegation was set forth in full herein.

125.    The State Department of Housing and Community Development has promulgated regulations, 25 C.C.R. §§ 6000 *et seq.*, in order to implement, interpret and make specific the provisions of the California Relocation Assistance Act.

126.   The California Relocation Assistance Act and regulations require that prior to proceeding with any phase of the project or any activity that will result in displacement a public entity shall prepare a Relocation Plan. Cal. Gov't Code § 7261 and 25 C.C.R. § 6010.

127.   California Gov't Code § 7261 and 25 C.C.R. § 6014 provide that no person shall be displaced until the public entity has adopted a Relocation Plan.

128.   Defendants have failed to adopt a Relocation Plan as required by the California Relocation Assistance Act.

## NINTH CLAIM FOR RELIEF

Failure to Comply with the Replacement Housing Requirements

of the California Redevelopment Law

(Cal. Health & Safety Code §§ 33413, 33413.5 and 33411.3)

(By All Plaintiffs Against City and CRA-LA)

129.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 128 above, as if each such allegation was set forth in full herein.

130.   The California Redevelopment Law, California Health and Safety Code §§ 33000, *et seq*., ("CRL") requires that CRA-LA, as a redevelopment agency, must adopt a plan to replace affordable housing before any is lost or removed as part of a redevelopment project.  The replacement housing must be affordable to households at the same or lower income as the former tenants and displaced tenants must be given priority for the replacement housing.  CRA-LA must also actually deliver the replacement housing within four years of its loss. CRA-LA also must give priority to displaced tenants to reside in the replacement housing.

131.   Plaintiffs are informed and believe and thereon allege that the Alexandria will have fewer units available to extremely low, very low and low income tenants once renovation is complete.

132.   Plaintiffs are informed and believe and thereon allege that CRA-LA has not provided, and has not adopted any plan to provide replacement housing to replace the units that have been lost and will be lost as a result of the Alexandria renovation.

133.   As a result of the removal of units affordable to extremely low and very low income tenants and CRA-LA's failure to comply with the replacement housing obligations set forth in Cal. Health & Safety Code §33413(a), plaintiffs have been severely damaged.

## TENTH CLAIM FOR RELIEF

Violations of the Fair Housing Act

(42 U.S.C. § 3604)

(By Individual Plaintiffs Against Defendants AHP and LPM)

134.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 133 above, as if each such allegation was set forth in full herein.

135.   The Fair Housing Act prohibits discrimination against qualified individuals with disabilities.  It provides:

> [D]iscrimination includes… a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [a disabled individual] an equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f)(3)(B);

136.   Each individual plaintiff is a "qualified individual with a disability" under 42 U.S.C. § 3604(h)(i).  Plaintiffs are informed, believe, and based thereon allege that defendants AHP and LPM were at all relevant times aware of plaintiffs' disabilities.

137.   Accommodation is necessary to afford plaintiffs equal opportunity to use and enjoy their homes.

LAS99 1672424-1.099760.0020          −27−

SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF

138.   Defendants AHP and LPM are refusing to provide reasonable and necessary accommodations thus diminishing the enjoyment of their dwellings.

139.   Additionally, defendants AHP and LPM and their managers, employees, and agents, including but not limited to LPM, Olympic Security Company and Westport Construction, Inc., have continuously harassed plaintiffs in connection with seeking reasonable and necessary accommodations.

140.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

141.   Unless defendants AHP and LPM are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against them to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

142.   Unless defendants AHP and LPM are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.

143.   Plaintiffs are entitled to recover compensatory damages and their reasonable attorneys' fees and costs incurred in bringing this action.

144.   Because defendants' discriminatory conduct is ongoing, injunctive and declaratory relief are appropriate remedies.

## **ELEVENTH CLAIM FOR RELIEF**

Violations California's Fair Employment and Housing Act

(Cal. Gov't Code §§ 12900, *et seq.*)

(By Individual Plaintiffs Against Defendants AHP and LPM)

145.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 144 above, as if each such allegation was set forth in full herein.

146.   Section 12927 of the California Government Code prohibits discrimination against qualified individuals with disabilities.  It provides in pertinent part:

> "Discrimination" …includes any …denial or withholding of housing accommodations; … includes harassment in connection with those housing accommodations;…and includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

Cal. Gov't Code §12927.

147.   Each individual plaintiff is a qualified individual with a disability under Cal. Gov't Code § 12926.

148.   Plaintiffs are informed, believe, and based thereon allege that defendants AHP and LPM were at all relevant times aware of plaintiffs' disabilities.

149.   Accommodation is necessary to afford plaintiffs equal opportunity to use and enjoy their homes.

150.   Defendants AHP and LPM are refusing to provide reasonable and necessary accommodations thus diminishing the plaintiffs' enjoyment of their dwellings.

151.   Additionally, defendants AHP and LPM and their managers, employees, and agents, including but not limited to LPM, Olympic Security Company and Westport Construction, Inc., have continuously harassed plaintiffs in connection with seeking reasonable and necessary accommodations.

152.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

153.   Unless defendants AHP and LPM are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against them to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

154.   Unless defendants AHP and LPM are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.  Plaintiffs are also entitled to attorneys' fees and costs incurred in bringing this action.

## TWELFTH CLAIM FOR RELIEF

Violation of Title II of the Americans with Disabilities Act

(42 U.S.C. § 12101, *et seq.*)

(By All Plaintiffs Against Defendants City and CRA-LA)

155.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 154 above, as if each such allegation was set forth in full herein.

156.   Congress enacted the Americans with Disabilities Act ("ADA") upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).

157.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1)-(2).

158.   Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

159.   The U.S. Department of Justice's regulations implementing Title II, 28 C.F.R. § 35.130(b)(1)(xii), provide that public entities may not, among other things, "Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." *See also* 28 C.F.R. 35.130(b)(1)(i)-(iv).  The ADA provides in pertinent part that: "The term disability means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. 12102(2).

160.   At all times relevant to this action, defendants City and CRA-LA were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

161.   At all times relevant to this action, the individual plaintiffs were qualified individuals because they were regarded by defendants to have a disability within the meaning of Title II of the ADA and they met the essential eligibility requirements for the receipt of the services, programs, or activities of the City and CRA-LA.

162.   Plaintiffs are informed, believe, and based thereon allege that defendants have systematically discriminated against plaintiffs through defendants' decision making processes and procedures for the distribution and monitoring of its redevelopment funds.

163.   Plaintiffs are informed, believe, and based thereon allege that defendants have failed to provide plaintiffs reasonable accommodations and that plaintiffs have been routinely discriminated against in a building redeveloped with public funds.

164.   Plaintiffs are informed, believe, and based thereon allege that defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of plaintiffs' rights.

165.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

166.   Pursuant to 42 U.S.C. § 12133, plaintiffs are entitled to recover compensatory damages and reasonable attorneys' fees and costs incurred in bringing this action.

167.   Because defendants' discriminatory conduct is ongoing, injunctive and declaratory relief are appropriate remedies.

## THIRTEENTH CLAIM FOR RELIEF

Violation of Section 504 of the Rehabilitation Act of 1973

(29 U.S.C. § 794)

(By Individual Plaintiffs Against All Defendants)

168.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 167 above, as if each such allegation was set forth in full herein.

169.   Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . . ." 29 U.S.C. § 794.  A recipient of federal funds, in providing any housing, aid, benefit, or service in a program or activity may not, *inter alia,* "[d]eny a qualified individual with handicaps the opportunity to participate in, or benefit from, the housing, aid, benefit, or service. . . or Afford a qualified individual with handicaps an opportunity to participate in, or benefit from, the housing, aid, benefit, or service that is not equal to that afforded to others." 24 C.F.R. §8.4(b).

170.   Plaintiffs are qualified individuals with disabilities within the meaning of the Rehabilitation Act because they have disabilities.  29 U.S.C. § 705(20)(B).

171.   At all times relevant to this action, defendants were recipients of federal funding within the meaning of the Rehabilitation Act.

172.   Through their acts and omissions described herein, defendants violated the Rehabilitation Act by unlawfully denying plaintiffs reasonable accommodations.  In addition, defendants have violated the Rehabilitation Act's mandate that no individual with a disability shall, "because a recipient's facilities are inaccessible to or unusable by individuals with handicaps, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity that receives Federal financial assistance."  24 C.F.R. §8.20.  Defendants have further failed to make altered areas readily accessible to and useable by persons with disabilities under 24 C.F.R. §8.23(b), including by failing to ensure that barriers are removed from public and altered areas.

173.   Plaintiffs are informed, believe, and based thereon allege that defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of plaintiffs.

174.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

175.   Pursuant to 29 U.S.C. § 794a, plaintiffs are entitled to recover compensatory damages and their reasonable attorneys' fees and costs incurred in bringing this action.

176.   Because defendants' discriminatory conduct is ongoing, injunctive and declaratory relief are appropriate remedies.

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

# FOURTEENTH CLAIM FOR RELIEF

Violation of Cal. Gov't Code § 11135

(Cal. Gov't Code § 11135)

(By Individual Plaintiffs Against All Defendants)

177.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 176 above, as if each such allegation was set forth in full herein.

178.   Section 11135(a) of the Cal. Gov't Code ("Section 11135(a)") provides in pertinent part:  "No person in the State of California shall, on the basis of race. . . or disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

179.   At all times relevant to this action, defendants received financial assistance from the State of California.

180.   Plaintiffs John Washington, Leonard Woods, and William Caldwell are African-American.  Plaintiff Hilda Quintana is Native American.  In addition, the vast majority of clients of Plaintiff LACAN are African-American. Furthermore, because defendants have treated all individual plaintiffs as having a disability, they are characterized as having a disability for the purpose of Section 11135(a).  *See also* Cal. Gov't. Code § 12926(i)(4).

181.   Through their acts and omissions described herein, defendants have violated Section 11135 by unlawfully subjecting plaintiffs to discrimination based on race and disability.

182.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

183.   Because defendants' discriminatory conduct is ongoing, injunctive and declaratory relief are appropriate remedies.  Plaintiffs are also entitled to attorneys' fees and costs incurred in bringing this action.

## FIFTEENTH CLAIM FOR RELIEF

Race Discrimination

(Title VI of the Civil Rights Act of 1964)

(42 U.S.C. §§ 2000(d) *et seq*.)

(By Individual Plaintiffs Against Defendants AHP and LPM)

184.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 183 above, as if each such allegation was set forth in full herein.

185.   Title VI of the Civil Rights Act of 1964 provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

186.   At all times relevant to this action, defendants were recipients of federal funding within the meaning of Title VI.

187.   Plaintiffs John Washington, Leonard Woods, William Caldwell, and Joseph Bell are African-American.  Plaintiffs Hilda Quintana and Allen McCorkendale associate with African Americans, including John Washington, Leonard Woods, William Caldwell, and Joseph Bell.  In addition, the vast majority of clients of Plaintiff LACAN are African-American.

188.   Defendants' conduct, as set forth above, constitutes discrimination against plaintiffs on the basis of, among other grounds, their race and their association with people of African-American race, in violation of Title VI.

189.   Plaintiffs are informed, believe, and based thereon allege that defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of plaintiffs.

190.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

191.   Pursuant to 42 U.S.C. § 2000(d)(7), plaintiffs are entitled to recover compensatory damages and reasonable attorneys' fees and costs incurred in bringing this action.

192.   Because defendants' discriminatory conduct is ongoing, injunctive and declaratory relief are appropriate remedies.

## SIXTEENTH CLAIM FOR RELIEF

Unruh Civil Rights Act

(California Civil Code §§ 51, *et seq.*)

(By Individual Plaintiffs Against All Defendants)

193.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 192 above, as if each such allegation was set forth in full herein.

194.   California's Unruh Civil Rights Act prohibits discrimination against individuals with disabilities and also prohibits discrimination based on a person's race.  Section 51 of the California Civil Code provides, in relevant part:

> All persons within the jurisdiction of this state are free and
> equal, and no matter what their … race, … disability …
> are entitled to the full and equal accommodations,
> advantages, facilities, privileged, or services in all
> business establishments of every kind whatsoever.
> Cal. Civ. Code § 51(b).

195.   The Unruh Act provides that "[a] violation of the right of any individual under the Americans with Disabilities Act … shall also constitute a violation of this section."  Cal. Civ. Code § 51(f).

196.   Plaintiffs John Washington, Leonard Woods, William Caldwell, and Joseph Bell are African-American.  Plaintiffs Hilda Quintana and Allen McCorkendale associate with African-Americans, including John Washington,

Leonard Woods, William Caldwell, and Joseph Bell.  In addition, the vast majority of clients of Plaintiff LACAN are African-American.  Furthermore, all the individual plaintiffs have disabilities.

197.   Defendants' conduct, as set forth above, constitutes discrimination against plaintiffs on the basis of, among other grounds, their race, their association with people of African-American race, and their disabilities.

198.   Defendants' conduct constitutes a violation of, among other laws, the Americans with Disabilities Act.

199.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

200.   As such, plaintiffs are entitled to statutory damages in an amount up to three times the amount of actual damages, with a minimum amount of $4,000, and attorneys' fees.  Cal. Civ. Code § 52(a), (e) and § 52.1(h).  Plaintiffs also are entitled to injunctive and declaratory relief.  Cal. Civ. Code § 52.1(b).

201.   Defendants committed the acts and omissions alleged herein with intent and/or in reckless disregard of plaintiffs' rights.  As such, plaintiffs are entitled to punitive damages.

## SEVENTEENTH CLAIM FOR RELIEF

Blind and Other Physically Disabled Persons Act

(California Civil Code §§ 54, *et seq.*)

(By Individual Plaintiffs Against All Defendants)

202.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 201 above, as if each such allegation was set forth in full herein.

203.   California's Blind and Other Physically Disabled Persons Act prohibits discrimination against individuals with disabilities.  Section 54 of the California Civil Code provides, in relevant part, that "[i]ndividuals with disabilities

shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease or compensation…"  Cal. Civ. Code § 54.1(b)(1).

204.   As set forth above, defendants discriminated against plaintiffs based on their disabilities by refusing to make reasonable accommodations, including reasonable modifications to existing rented premises, which were and continue to be necessary in order to afford the plaintiffs with equal opportunity to use and enjoy their rented premises, and by failing to provide oversight and guidelines to ensure that discrimination did not occur.

205.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity and severe mental and emotional anguish.

206.   Pursuant to California Civil Code § 54 (c), defendants are liable to each plaintiff for no less than $1,000, or three times actual damages, and for injunctive relief, attorneys' fees and costs incurred in this act.

## EIGHTEENTH CLAIM FOR RELIEF

Violation of 42 U.S.C. § 1983

(42 U.S.C. § 1983)

(By Individual Plaintiffs Against All Defendants)

207.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 206 above, as if each such allegation was set forth in full herein.

208.   42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of a state or territory or the District of Columbia, subjects, or causes to be subjected, a citizen of the United States or other person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

209.   At all relevant times, defendants acted under color of state law in the conduct complained of in this suit to carry out their policies or customs.

210.   The individual plaintiffs had a right to be notified of their rights to relocation assistance, which was triggered by the commitment of federal, state and local redevelopment funds to acquire and renovate the Alexandria.

211.   Defendants failed to notify them of those rights and undertook affirmative steps to displace tenants without providing the relocation assistance.

212.   By displacing tenants, defendants deprived the individual plaintiffs of their property, their tenancies.

213.   This failure to notify the individual plaintiffs of their rights violates rights secured to them by the equal protection and due process clauses of the United States Constitution.

214.   Defendants' conduct, as alleged above, also violates rights secured to the individual plaintiffs by the equal protection clause of the United States Constitution, in that it was undertaken with the intent of discriminating against them because of their race and disability status.

215.   Defendants' conduct, as alleged above, also violates rights secured to the individual plaintiffs by the takings and due process clauses of the United States Constitution, in that it deprived the individual plaintiffs of their tenancies without due process of law.

216.   Defendants' conduct entitles plaintiffs to recover damages, attorneys' fees and other relief, including declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

217.   Plaintiffs are entitled to injunctive and declaratory relief because defendants' discriminatory conduct is ongoing.

## NINETEENTH CLAIM FOR RELIEF

Violation of 42 U.S.C. § 1985

(By Individual Plaintiffs Against All Defendants)

218.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 217 above, as if each such allegation was set forth in full herein.

219.   42 U.S.C. § 1985(3) provides in pertinent part: "In any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

220.   Through their acts and omissions described herein, defendants have violated 42 U.S.C. § 1985(3) by conspiring through their conduct to deprive plaintiffs of their relocation assistance and property rights and undertook affirmative steps to displace tenants without providing the relocation assistance. Plaintiffs are informed and believe, and therefore allege, that defendants have a practice, which is continuing, of discriminating against tenants who have disabilities and who are minorities.

221.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

222.   Pursuant to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1988, Plaintiffs are entitled to recover compensatory damages and attorneys' fees and, because defendants' discriminatory conduct is ongoing, injunctive and declaratory relief.

## TWENTIETH CLAIM FOR RELIEF

Negligence

(By Individual Plaintiffs Against Defendants AHP and LPM)

223.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 222 above, as if each such allegation was set forth in full herein.

224.   Defendants carelessly, negligently, wantonly and unlawfully injured plaintiffs by depriving them of safe and habitable living conditions.

225.   Defendants carelessly, negligently, wantonly and unlawfully injured plaintiffs by discriminating against them on the bases of their ages, races, and disabilities in breach and violation of their duties, obligations, and responsibilities under Section 504 of the Rehabilitation Act, the Unruh Civil Rights Act, the Disabled Persons Act, 42 U.S.C. § 1983 and 42 U.S.C. 1985(3).  These statutes were adopted for the purpose of protecting persons from being deprived such of the benefits, services and opportunities to which they are entitled under the law on the basis of a race or disability.  In violating these statutes, defendants proximately caused the sort of emotional and physical injury to plaintiffs that these statutes were designed to prevent.

226.   Defendants carelessly, negligently, wantonly and unlawfully injured plaintiffs by failing to provide reasonable accommodations, failing to provide legally required relocation benefits and assistance, and failing to provide adequate replacement housing in violation of federal and state law.

227.   Defendants AHP and LPM knew, or reasonably should have known, that plaintiffs would suffer damages as a result of defendants' conduct as alleged herein.

228.   Each plaintiff has been damaged by defendants' conduct in an amount equal to rents due and paid by each plaintiff during the time period AHP owned the building, or in an amount to be proven at trial.

LAS99 1672424-1.099760.0020                    -41-

229.   As a direct and proximate result of AHP's and LPM's conduct, each plaintiff has suffered and will continue to suffer substantial damages, including illness, physical injury, mental stress, emotional distress, discomfort, annoyance, anxiety, fear for safety, loss in the value of his or her leasehold, property damage, loss of money, and lost income, all to each plaintiff's damage in an amount to be determined at trial.

230.   Unless defendants AHP and LPM are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against AHP and LPM to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will be threatened daily with the above referenced conditions.

231.   Unless defendants AHP and LPM are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.

232.   Plaintiffs have no plain, speedy, or adequate remedy at law.

233.   Defendants AHP's and LPM's conduct as alleged herein has been fraudulent, grossly negligent, malicious, and oppressive, thereby entitling each plaintiff to punitive damages in an amount to be determined at trial.

## TWENTY-FIRST CLAIM FOR RELIEF

### Tortious Breach of Warranty of Habitability

(By Individual Plaintiffs Against Defendants AHP and LPM)

234.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 233 above, as if each such allegation was set forth in full herein.

235.   Plaintiffs and defendants AHP and LPM have been and continue to be in a landlord tenant relationship created by the written and/or oral lease agreements entered into when plaintiffs moved into the premises.  This relationship was

renewed on a monthly basis, as plaintiffs paid rent to AHP and LPM each month that they lived on the premises.

236. By virtue of the landlord-tenant relationship, AHP and LPM owe plaintiffs the duty to comply with building, fire, health and safety codes, ordinance, regulations and other laws and to maintain the premises in a habitable condition.

237. Defendants AHP and LPM have breached this duty and the implied warranty of habitability by failing to correct the substandard conditions complained of herein.

238. Defendants AHP and LPM know, or reasonably should have known, that plaintiffs would suffer damages as a result of this breach. Defendants were forwarded plaintiffs' complaints regarding the uninhabitable conditions, and their agents, the on and off-site managers hired and supervised by AHP and LPM, were made aware of the uninhabitable conditions by plaintiffs.

239. Each plaintiff has been damaged by defendants' conduct in an amount equal to rents due and paid by each plaintiff during the time period AHP owned the building, or in an amount to be proven at trial.

240. As a direct and proximate result of AHP's and LPM's conduct, each plaintiff has suffered and will continue to suffer substantial damages, including illness, physical injury, mental stress, emotional distress, discomfort, annoyance, anxiety, fear for safety, loss in the value of his or her leasehold, property damage, loss of money, and lost income, all to each plaintiff's damage in an amount to be determined at trial.

241. Unless defendants AHP and LPM are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against AHP and LPM to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

242.   Unless defendants AHP and LPM are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.

243.   Plaintiffs have no plain, speedy, or adequate remedy at law.

244.   Defendants AHP's and LPM's conduct in tortiously breaching the implied warranty of habitability has been fraudulent, grossly negligent, malicious, and oppressive, thereby entitling each plaintiff to punitive damages in an amount to be determined at trial.

## TWENTY-SECOND CLAIM FOR RELIEF

Nuisance

(By Individual Plaintiffs Against Defendants AHP and LPM)

245.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 244 above, as if each such allegation was set forth in full herein.

246.   The conditions of the Alexandria as described herein constitute a nuisance within, but not limited to, the meaning of Cal. Civ. Code §§ 3479, *et seq.*, in that these defective conditions and other violations are injurious to the health and safety of each plaintiff and the public at large, and interfere substantially with each plaintiff's comfortable enjoyment of the premises.

247.   This nuisance has a deleterious effect on the public while at the same time specially injuring plaintiffs, who are exposed to defective conditions and other housing violations not directly affecting the public at large.

248.   Despite being required by law to abate the nuisance, defendants AHP and LPM have failed and continue to fail to correct conditions rendering the premises a nuisance.  Defendants AHP and LPM know, or reasonably should have known, that plaintiffs would be injured as a result of this failure to abate the nuisance.

249.   As a direct and proximate result of defendants AHP's and LPM's failure to abate the nuisance, the value of the leasehold held by each plaintiff has

been diminished.  Consequently, each plaintiff has been damaged in an amount equal to the rental payments due and paid during each plaintiff's leasehold, or in an amount to be proven at trial.

250.   As a direct and proximate result of defendants AHP's and LPM's failure to abate the nuisance, each plaintiff has suffered and/or is now suffering substantial damages, including illness, physical injury, mental stress, emotional distress, discomfort, annoyance, anxiety, fear for safety, loss in the value of his or her leasehold, property damage, loss of money, and lost income, all to each plaintiff's damage in an amount to be proven at trial, but which amount is within the jurisdictional requirements of this Court.

251.   Unless defendants AHP and LPM are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against defendants, and each of them, to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

252.   Unless defendants AHP and LPM are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.  Plaintiffs have no plain, speedy, or adequate remedy at law.

253.   Defendants AHP's and LPM's failure to abate the nuisance has been fraudulent, grossly negligent, malicious, and oppressive, thereby entitling plaintiffs to punitive damages in an amount to be determined at trial.

## TWENTY-THIRD CLAIM FOR RELIEF

Negligent Maintenance of the Premises

(By Individual Plaintiffs Against Defendants AHP and LPM)

254.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 253 above, as if each such allegation was set forth in full herein.

255.   As landowners and/or managers of land, defendants AHP and LPM owe or owed a duty of care under common law and Cal. Civ. Code § 1714 to exercise due care in management of their property so as to avoid foreseeable injury to others.  This duty of care required defendants to comply with all building, fire, health, and safety codes, ordinances, regulations and other laws applying to the maintenance and operation of residential rental housing.

256.   Defendants AHP and LPM have breached their common law and statutory duties of due care by failing to correct the substandard conditions complained of herein.  Defendants AHP and LPM knew, or reasonably should have known, that plaintiffs would be injured as a result of this breach of common law and statutory duties of due care.

257.   As a direct and proximate result of defendants AHP's and LPM's negligent maintenance of the premises, the value of the leasehold held by each individual plaintiff has been diminished.  Consequently, each individual plaintiff has been damaged in an amount to be proven at trial

258.   As a direct and proximate result of the conduct of defendants AHP and LPM each individual plaintiff has suffered and continues to suffer illness, physical injury, mental stress, severe emotional distress, discomfort, annoyance, anxiety, fear for safety, loss in the value of his or her leasehold, property damage, loss of money, and lost income, all to each plaintiff's damage in an amount to be proven at trial.

259.   Unless defendants AHP and LPM are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against defendants to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

260.   Unless defendants AHP and LPM are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.

261.   Plaintiffs have no plain, speedy, or adequate remedy at law.

262.   Defendants' acts and omissions have been fraudulent, grossly negligent, malicious, and oppressive, thereby entitling plaintiffs to punitive damages in an amount to be determined at trial.

## TWENTY-FOURTH CLAIM FOR RELIEF

Negligent Hiring and Supervision

(By Individual Plaintiffs Against Defendants AHP and LPM)

263.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 262 above, as if each such allegation was set forth in full herein.

264.   As landowners and/or managers of land, defendants owe or owed a duty of care under common law and under Cal. Civ. Code § 1714 to exercise due care in the management and operation of their property to avoid foreseeable injury to others.

265.   Defendants AHP and LPM breached their common law and statutory duties of due care by failing to correct the substandard conditions complained of herein and by failing to adequately manage and supervise their managers, employees, and agents, including but not limited to LPM, Olympic Security Company and Westport Construction, Inc.

266.   Plaintiffs are informed, believe, and on that basis allege, that defendants AHP and LPM knew or reasonably should have known that their managers, employees, and agents would create the substandard conditions complained of herein, and that their conduct as described herein would cause each plaintiff severe emotional distress and other injuries.

267.   As a direct and proximate result of the conduct of defendants AHP and LPM, and each of them, each plaintiff has suffered and continues to suffer illness,

LAS99 1672424-1.099760.0020                    -47-

physical injury, mental stress, emotional distress, discomfort, annoyance, anxiety, fear for safety, loss in the value of his or her leasehold, property damage, loss of money, and lost income, all to each plaintiff's damage in an amount to be determined at trial, but which amount is within the jurisdictional requirements of this Court.

268.   Unless defendants, and each of them, are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against defendants, and each of them, to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

269.   Unless defendants are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.

270.   Plaintiffs have no plain, speedy, or adequate remedy at law.

271.   Defendants' acts and omissions have been fraudulent, grossly negligent, malicious, and oppressive, thereby entitling each plaintiff to punitive damages in an amount to be determined at trial.

## TWENTY-FIFTH CLAIM FOR RELIEF

Breach of Implied Covenant of Quiet Enjoyment

(By Individual Plaintiffs Against Defendants AHP and LPM)

272.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 271 above, as if each such allegation was set forth in full herein.

273.   Implied in the rental agreement between defendants and each plaintiff with whom they entered into a rental agreement was a covenant that the defendants would not interfere with the plaintiff's quiet enjoyment of the premises during the term of his or her tenancy.

274.   Defendants have a duty to abide by the implied covenant of quiet enjoyment.  Defendants breached this duty and the implied covenant by their conduct as described above, including, but not limited to, failing to repair unsafe, unsanitary, and uninhabitable conditions at the premises and failing to maintain the premises in habitable condition, by violating fair housing laws, and by partially evicting plaintiffs.

275.   Defendants knew, or reasonably should have known, that plaintiffs would suffer damage as a result of this breach.  Defendants were forwarded plaintiffs' complaints regarding the uninhabitable conditions, fair housing violations and the loss of plaintiffs' full use of their units.

276.   As a direct and proximate result of defendants' breach of the covenant of quiet enjoyment, the value of the leasehold held by each plaintiff has been diminished.  Consequently, each plaintiff was damaged in an amount equal to the rental payments due and paid during each plaintiff's leasehold, or in an amount to be proven at trial.

277.   As a direct and proximate result of defendants' conduct, each plaintiff has suffered and will continue to suffer substantial damages, including illness, physical injury, mental stress, emotional distress, discomfort, annoyance, anxiety, fear for safety, loss in the value of his or her leasehold, property damage, loss of money, lost income, and other injuries all to each plaintiff's damage in an amount to be determined at trial, but which amount is within the jurisdictional requirements of this Court.

278.   Unless defendants are restrained by order of this Court, it will be necessary for plaintiffs to commence many successive actions against them to secure compensation for damages sustained, thus requiring a multiplicity of suits, and plaintiffs will daily be threatened with the above referenced conditions.

279.   Unless defendants are enjoined from continuing their course of conduct, plaintiffs will suffer irreparable injury in that plaintiffs will be deprived from the comfortable enjoyment of their property.

280.   Plaintiffs have no plain, speedy, or adequate remedy at law.

281.   Defendants' conduct has been fraudulent, grossly negligent, malicious, and oppressive, thereby entitling each plaintiff to punitive damages in an amount to be determined at trial.

## TWENTY-SIXTH CLAIM FOR RELIEF

Unfair Business Practices

(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

(By All Plaintiffs Against Defendants AHP and LPM)

282.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 281 above, as if each such allegation was set forth in full herein.

283.   Plaintiffs are informed, believe, and thereupon allege that, beginning at an exact date which is unknown to plaintiffs, but from at least August 2006, and continuing to the present day, defendants have committed unlawful, unfair and/or fraudulent business practices as defined by Business and Professions Code Sections 17200, *et seq.*, by engaging in the unlawful, unfair and fraudulent business practices set forth below:

    a.    violating fair housing laws by harassing African-American tenants and tenants with disabilities;

    b.    failing to provide reasonable accommodation to tenants with disabilities;

    c.    failing to maintain and repair the premises as required by numerous residential, health, and safety laws, including but not limited to Civil Code section 1941.1, and as required by the implied warranty of

habitability that exists under California law in every residential rental agreement;

d.     violating California Civil Code Section 1954 by engaging in unlawful entry into plaintiffs' dwellings, abusing the right of access and/or using it to harass plaintiffs;

e.     violating Civil Code Section 789.3 by removing personal property from and locking out plaintiff Quintana from part of her unit, and by terminating the utilities of all plaintiffs with intent to terminate their tenancies; and

f.     violating Civ. Code §1942.5(c) and common law by unlawfully retaliating against plaintiffs for lawfully and peacefully exercising their legal rights to organize, participate in public comment and for lodging complaints with government agencies regarding defendant's conduct and conditions resulting there from by decreasing services, harassing them, and threatening to bring actions to recover possession of their units.

284.   By their continuous violations of the above referenced statutes and common law, defendants have engaged in *per se* unlawful business practices constituting unfair competition in violation of Business & Professions Code sections 17200, *et seq*.

285.   Plaintiffs have suffered, and continue to suffer, irreparable harm due to defendants' continued conduct as described above.  Plaintiffs have been injured in fact and suffered a loss of money and property as evidenced by the following, which are listed by way of example and not limitation: a decrease in the value of their leaseholds, loss of relocation monies due, increased cost of housing after being forced to leave the Alexandria, lost or damaged personal property, diminished use of their leaseholds and loss of leaseholds.

286.   Plaintiffs are informed, believe, and thereon allege that, unless defendants are restrained from doing so, defendants will continue to engage in said unlawful, unfair, and fraudulent business practices.

287.   An action for injunctive relief and restitution against defendants under the Unfair Practices Act is specifically authorized by Business & Professions Code section 17203.

288.   Continuing commissions and omissions by the defendants of the acts alleged above will irreparably harm plaintiffs for which harm they have no plain, speedy, or adequate remedy at law.

## TWENTY-SEVENTH CLAIM FOR RELIEF

Retaliation

(Cal. Civ. Code § 1942.5)

(By Individual Plaintiffs Against Defendants AHP and LPM)

289.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 288 above, as if each such allegation was set forth in full herein.

290.   California Civil Code Section 1942.5 prohibits lessors from retaliating against lessees because of the exercise by the lessee of his or her rights or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling.

291.   Defendants have retaliated against plaintiffs for lawfully and peacefully exercising their legal rights to organize, participate in public comment and for lodging complaints with government agencies regarding defendants' conduct and conditions resulting therefrom by decreasing services, harassing them, and threatening to bring actions to recover possession of their units.

292.   Defendants AHP's and LPM's conduct in breaching Section 1942.5 has been fraudulent, malicious, and oppressive, thereby entitling each plaintiff to punitive damages in an amount to be determined at trial.

## TWENTY-EIGHTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress

(By Individual Plaintiffs Against Defendants AHP and LPM)

293.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 292 above, as if each such allegation was set forth in full herein.

294.   Defendants' conduct as described above was so extreme that it exceeded all possible bounds of decency and was so outrageous that any reasonable person would regard it as intolerable.  Defendants abused their authority as the owner and manager of the Alexandria to give them real and apparent power to affect the plaintiffs' interests as tenants.  Defendants further knew that, because of their ages and disabilities, plaintiffs were particularly vulnerable to emotional distress and knew that defendants' conduct likely would harm the plaintiffs.

295.   In engaging in the conduct, defendants intended to cause such emotional distress and/or acted with reckless disregard for the probability that plaintiffs would suffer emotional distress from their conduct.

296.   As a direct and proximate result of the aforementioned acts, plaintiffs have suffered and continue to suffer substantial damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

297.   Defendants AHP's and LPM's conduct has been fraudulent, malicious, and oppressive, thereby entitling each plaintiff to punitive damages in an amount to be determined at trial.

## TWENTY-NINTH CLAIM FOR RELIEF

Petition for Writ of Mandate

(Cal. Code Civ. Proc. § 1085)

(By All Plaintiffs Against Defendants City and CRA-LA)

298.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 297 above, as if each such allegation was set forth in full herein.

299.   Defendants have a clear, present, and ministerial duty to obey all the laws of the State of California and the United States.

300.   Defendants have violated the laws of the State of California and the United States as alleged throughout this Complaint.

301.   Plaintiffs have a clear and present beneficial right in defendants' duty to obey the law in that they have been harmed and continue to be harmed as alleged in this complaint as a result of the disobedience of the laws.

302.   No adequate remedy exists to stop the violations of law unless and until this Court exercises its equitable powers.  Unless compelled by this Court to perform those acts and duties and to refrain from acts as required by law, defendants will continue to violate the law, and plaintiffs and other tenants will be injured as a result.

303.   Therefore, plaintiffs seek a petition for writ of mandate to compel defendants to immediately comply with their mandatory legal duties as set forth herein.

## **PRAYER**

WHEREFORE, plaintiffs pray for relief and judgment as follows:

**On Counts 10, 11, 13 through 15 and 17 through 19 against AHP and LPM:**

(1)   For an order enjoining defendants from violating the Fair Housing Act, the Fair Employment and Housing Act, Section 504 of the Rehabilitation Act of 1973, Cal. Gov't Code § 11135, Title VI of the Civil Rights Act of 1964, the Blind and Other Physically Disabled Persons Act, 42 U.S.C. § 1983, and 42 U.S.C. § 1985;

(2)   For a declaration that defendants have violated the Fair Housing Act, the Fair Employment and Housing Act, Section 504 of the Rehabilitation Act of 1973, Cal. Gov't Code § 11135, Title VI of the Civil Rights Act of 1964, the Blind

and Other Physically Disabled Persons Act, 42 U.S.C. § 1983, and 42 U.S.C. § 1985;

     (3)    For statutory and/or compensatory damages according to proof;

     (4)    For plaintiffs' reasonable attorneys' fees and costs as allowed by law;

     (5)    For such other and further relief as the Court deems just and proper.

**On Counts 16, 20 through 25, and 27 and 28 against AHP and LPM:**

     (6)    For an order enjoining defendants from violating the Unruh Civil Rights Act and Cal. Civ. Code § 1942.5;

     (7)    For a declaration that defendants have violated the Unruh Civil Rights Act and Cal. Civ. Code § 1942.5;

     (8)    For statutory and/or compensatory damages according to proof;

     (9)    For punitive and other exemplary damages according to proof;

     (10)    For plaintiffs' reasonable attorneys' fees and costs as allowed by law; and

     (11)    For such other and further relief as the Court deems just and proper.

**On Count 26 against AHP and LPM:**

     (12)    For an order enjoining defendants from violating Cal. Bus. & Prof. Code § 17200, *et seq.*;

     (13)    For a declaration that defendants have violated Cal. Bus. & Prof. Code § 17200, *et seq.*;

     (14)    For restitution, disgorgement of profits, and other equitable relief according to proof;

     (15)    For plaintiffs' reasonable attorneys' fees and costs as allowed by law; and

     (16)    For such other and further relief as the Court deems just and proper.

**On All Counts against the City and CRA-LA:**

     (17)    For an order enjoining defendants from violating the Uniform Relocation Act, the Housing and Community Development Act, the California

1  Relocation Assistance Act, the California Redevelopment Law, the Americans with

2  Disabilities Act, Section 504 of the Rehabilitation Act of 1973, Cal. Gov't Code

3  § 11135, the Unruh Civil Rights Act, **42 U.S.C. § 1983, 42 U.S.C. § 1985,** and the

4  Blind and Other Physically Disabled Persons Act;

5        (18)   For a declaration that defendants have violated the Uniform Relocation

6  Act, the Housing and Community Development Act, the California Relocation

7  Assistance Act, the California Redevelopment Law, the Americans with Disabilities

8  Act, Section 504 of the Rehabilitation Act of 1973, Cal. Gov't Code § 11135, the

9  Unruh Civil Rights Act, **42 U.S.C. § 1983, 42 U.S.C. § 1985,** and the Blind and Other

10  Physically Disabled Persons Act;

11        (19)   For statutory and/or compensatory damages according to proof;

12        (20)   For plaintiffs' reasonable attorneys' fees and costs as allowed by law;

13  and

14        (21)   For such other and further relief as the Court deems just and proper.

15

16  Dated:  July 25, 2008             **McDERMOTT WILL & EMERY LLP**
                                    MATTHEW OSTER

17

18                                By:   /s/ Matt Oster

19                                  Matthew Oster
                                Attorneys for plaintiffs William

20                                  Caldwell, Allen McCorkendale, Hilda
                                Quintana, Leonard Woods, John

21                                  Washington, Joseph Bell, Doris Jarrett,
                                Patrick Michael O'Shea, Diane Merritt

22                                  and CANGRESS

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT FOR DAMAGES ,DECLARATORY, INJUNCTIVE RELIEF**